IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| CONCERNED TOW OPERATORS<br>OF KANSAS CITY, MISSOURI et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF KANSAS CITY, MISSOURI,<br>et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 12-1328-CV-W-ODS |

## ORDER AND OPINION DENYING PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

Pending before the Court is Plaintiffs' Motion for Preliminary Injunction (Doc. # 23). The Motion is denied.

## I. BACKGROUND

The parties generally agree on the facts of this case. Any disputed facts will be viewed in the light most favorable to Plaintiff. Plaintiff Concerned Tow Operators of Kansas City, Missouri, is an unincorporated association of owners of automotive towing companies doing business within the City of Kansas City. Plaintiff Northstar Auto Body, Inc., is an automotive towing service. It is not clear whether Northstar is a member of Concerned Tow Operators. Plaintiffs filed suit against Defendant City of Kansas City, Missouri ("the City"), and Defendant Tegsco, LLC d/b/a AutoReturn ("AutoReturn") and raised three counts in their Complaint: (1) Declaratory Relief: Federal Preemption; (2) Declaratory Relief: Conflict with State Laws; and (3) Declaratory Relief: Hancock Amendment.[1]

Plaintiffs seek a preliminary injunction to prohibit the City from enforcing certain Kansas City tow ordinances. However, it is unclear which specific provisions Plaintiffs

---

[1] Plaintiffs also named Mayor Sylvester James as a Defendant who was later dismissed from this case. (*see* Doc. # 22)

seek to enjoin the City from enforcing. Plaintiffs' Motion (Doc. # 23) states that Plaintiffs seek to enjoin the City from enforcing Section 70-273 and Section 76-287(2) of the Kansas City Code of Ordinances. Plaintiffs' Suggestions in Support (Doc. # 24) also make references to enjoining the City from enforcing Section 76-289 and Section 76-311. Accordingly, the Court will consider all four sections in this Order. Understanding Plaintiffs' claims requires an understanding of the history of the City's ordinances and practices related to towing.

Before 2000, the general practice of tow truck drivers in the Kansas City metro area was to drive to the scene of an accident and solicit business for towing services—also referred to as "wreck chasing" or the "go and tow" system.

The tow ordinances were originally enacted as Ordinance No. 991530, which became effective June 17, 2000. The 2000 Tow Ordinances made it unlawful for the owner or operator of a tow vehicle to:

> Stop at or proceed to the scene of an accident unless called to the scene, requested to stop, or flagged down by the owner or operator of a vehicle involved in an accident or requested to perform the service by a law enforcement officer or public agency pursuant to that agency's procedures.

Plaintiffs allege that the "go and tow" system occurred even after the tow ordinances were enacted in 2000.

In 2008, the City added a code provision, Ordinance 081186, now codified at § 70-273 of the City Code, which duplicated many of the provisions included in Ordinance No. 991530. This provision, which will be referred to as the "anti-solicitation law," states that the owner of a tow vehicle or tow vehicle operator shall not:

> (1) Stop, stand or park a tow vehicle at a location where an accident has occurred to solicit business unless:
>
> > a. The owner of a tow vehicle or tow vehicle operator has been requested by the police officer in charge at the location where an accident has occurred; or
> >
> > b. The owner of a tow vehicle or tow operator has been requested by one of the operators, owner, or agent of the vehicles involved in the accident; or
> >
> > c. The owner of a tow vehicle or tow operator has been requested by the dispatcher of the police officer in charge at the location where an accident

2

>    has occurred.
>
>    (2) Remain at a location where an accident has occurred after being directed to leave by a police officer.
>
>    (3) Fail to provide any police officer, upon request, at the location where an accident has occurred with the name and telephone number of the person requesting the tow truck operator, or the police officers name and serial number requesting the tow truck operator or the dispatchers name and serial number requesting the tow truck operator

Code, § 70-273.

On March 29, 2012, the City enacted Ordinance No. 120271, now codified at § 76-287(2), which revised the tow ordinances. As before, the Code makes it unlawful for the owner or operator of a tow truck to:

> Stop at or proceed to the scene of an accident unless called to the scene, requested to stop, or flagged down by the owner or operator of a vehicle involved in an accident or requested to perform the service by a law enforcement officer or regulatory agency pursuant to that agency's procedures.

Code, § 76-287(2). This provision will be referred to as the "no stop or proceed" law.

The revised Code also requires the registration of any towing company removing vehicles from accidents. Code, § 76-311. A tow operator is not allowed to report for or make a city tow or emergent tow unless it has registered for and received a registration number that must be affixed to the registered tow truck.[2]

In conjunction with the new ordinance, the City issued a Request for Proposals for the dispatch of city tows. The proposed contract called for the winning bidder to pay a per-tow fee to the City. The City eventually contracted with AutoReturn as a single-source vendor to dispatch city tows. AutoReturn has established a network of approximately 15 local towing subcontractors to service the contract. Plaintiff alleges that although the Code sets out a procedure by which application for a registration

---

[2] A city tow includes all tows ordered through the City dispatch system by the Kansas City, Missouri Police Department, City, or any other regulatory agency. Code, § 76-281. An emergent tow "means a law enforcement directed movement of any vehicle by a tow vehicle in order to regulate, facilitate and provide for the proper and orderly flow of traffic upon the streets, alleys, road, highways and thoroughfares within the city when there is an emergency situation as defined in section 76-282." Code, § 76-281

number is made to the director, in practice, there is no application process. Instead, the director gives the registration decals to AutoReturn who then issues the decals to its subcontractors.

Finally, the revised towing Code includes a provision captioned "Price Schedule and Authorization for Tow," which provides that the owners of all tow vehicles operating in the City must prepare and file a schedule of prices to be charged for the towing and storage of vehicles. Code, § 76-289(a). The provision makes it unlawful to charge a sum in excess of the amount authorized by the schedule. Code, § 76-289(b).

Plaintiffs argue Ordinance 120271 is preempted by federal law. Title 49, United States Code § 14501(c)(1) states, as a general rule:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State . . . may not enact or enforce a law, regulation or other provision having the force and effect of law related to a price, route or service of any motor carrier . . . with respect to the transportation of property.

This general rule has an exception codified at 49 U.S.C. § 14501(c)(2)(A) known as the "safety exception," which states that the general rule "shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . ."[3]

## II. DISCUSSION

In deciding whether to grant Plaintiff's Motion, the Court will consider the factors outlined in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981). "Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc.*, 640 F.2d at 112. No one factor is dispositive; all factors must be considered to determine whether "on balance, they weight towards granting the injunction." *Baker Elec. Co-Op, Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994). However, out of all of the factors, the "likelihood of success on the merits is most significant." *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013).

---

[3] The general rule also has a "nonconsensual price exception," which will not be discussed in this Order. See 49 U.S.C. § 14501(c)(2)(C).

4

## A. Threat of Irreparable Harm

Plaintiffs contend they generate substantial revenues from the "go and tow" system but because of the increased enforcement of the "no stop or proceed" and anti-solicitation ordinances (Sections 70-273 and 76-287(2)), they are "effectively foreclosed from performing accident towing work within the City of Kansas City." Because of this, Plaintiffs argue they will suffer immediate and irreparable harm if the requested preliminary injunction is not issued. The Court disagrees.

The current "no stop or proceed" law has existed since 2000. The 2000 Tow Ordinances made it unlawful for the owner or operator of a tow vehicle to:

> Stop at or proceed to the scene of an accident unless called to the scene, requested to stop, or flagged down by the owner or operator of a vehicle involved in an accident or requested to perform the service by a law enforcement officer or public agency pursuant to that agency's procedures.

The 2012 Code revisions are almost identical—the only change are the words "public agency" to "regulatory agency." Section 76-287(2) of the Code reads:

> It shall be unlawful for the owner or operator of a tow vehicle to: * * *
>
> Stop at or proceed to the scene of an accident unless called to the scene, requested to stop, or flagged down by the owner or operator of a vehicle involved in an accident or requested to perform the service by a law enforcement officer or regulatory agency pursuant to that agency's procedures.

Thus, issuing a preliminary injunction would not preserve the status quo since the current system—prohibiting tow operators from proceeding to the scene of an accident unless called to the scene—has been the status quo since 2000. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("A court issues a preliminary injunction in a lawsuit to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits.").

Plaintiffs acknowledge that the anti-solicitation and "no stop and proceed" ordinances have existed prior to the 2012 ordinance. Plaintiffs state:

> Although § 70-273 and a substantially similar version of § 76-287(2) existed prior to the enactment of the 2012 ordinance and the execution of the AutoReturn contract, they were obviously ignored under the "go and tow" system. However, since the effective date of the AutoReturn contract, November 1, 2012, city police officers have, pursuant to City directive, begun writing citations to non-

> AutoReturn tow truck drivers who stop the scene of auto accidents for the purpose of soliciting towing work.

Suggestions in Support (Doc. # 24), p. 5-6.  According to Plaintiffs, the alleged irreparable harm attributable to the solicitation rules depends not on the *existence* of the ordinance, but the degree to which the ordinance has been *enforced*.  Under Plaintiff's theory, the City's enforcement of the ordinance was minimal—but now, the City has stepped up enforcement.  Plaintiffs essentially argue that they had no irreparable harm when the ordinance was passed in 2000 because they could violate it without repercussion—but now, there are repercussions for violating the law.  The Court finds this argument somewhat unpalatable.  The argument also leads to absurd results, because if it is acceptable in this case it could be applied in a myriad of other circumstances and permit plaintiffs to allege ever-changing quantums of "harm" based on the alleged frequency, intensity, or seriousness with which a particular law is enforced.  For instance, a plaintiff could contend there was no harm in 2000 because only 25% of violators were ticketed, but now there is irreparable harm because 50% of violators were ticketed.  Next year, a different plaintiff could contend that he suffered no harm when 50% of violators were ticketed, but is suffering harm after the City stepped up efforts to enforce and began ticketing 80% of violators.  The concept of irreparable harm is not (or at least should not be) so elastic.  Irreparable harm should arise (if at all) when the cause of the harm arises.  The cause of the harm is the ordinance, and the harm arose in 2000.  Plaintiffs cannot contend they are harmed for the first time only now because they were not punished in the past.

Finally, Plaintiffs specifically state that they do not assert an irreparable harm if required to comply with § 76-289—"Price Schedule and Authorization for Tow"— pending the trial of this case.  This severely undercuts their argument for why a preliminary injunction should issue.  Plaintiff's failure to demonstrate irreparable harm is sufficient to end the Court's analysis using the *Dataphase* factors.  *See Caballo Coal Co. v. Ind. Mich. Power Co.*, 305 F.3d 796, 800 (8th Cir. 2002) (citing *Dataphase*, 640 F.2d at 114 n.9) ("[A] failure to demonstrate irreparable harm, standing alone, may be a sufficient basis to deny preliminary injunctive relief.").  However, as will be discussed, the other factors also balance against granting Plaintiff's Motion.

B. Probability of Success on the Merits

1. Res Judicata and Collateral Estoppel

First, the City argues Plaintiffs cannot prevail on the merits because they are collaterally estopped and/or barred by res judicata from asserting any claims related to the towing ordinances because the issue was fully litigated and resolved in *Tow Operators Working to Protect Their Right to Operate on the Streets of Kansas City v. City of Kansas City, Missouri*, 338 F.3d 873 (8th Cir. 2003) [hereinafter "*TOWPROS*"].

The Court finds Plaintiffs are not barred by the doctrines of collateral estoppel and/or res judicata.[4] In this case, Plaintiff Concerned Tow Operators has defined itself as "an unincorporated association of owners of automotive towing companies doing business within the City." Complaint (Doc. # 1), ¶ 3. Its membership includes "tow truck businesses located with the City of Kansas City, Missouri . . . ." *Id.* Plaintiff Northstar defines itself as "an automotive towing service with its principal business located in Kansas City, Missouri." *Id.*, ¶ 4. In *TOWPROS*, the plaintiffs identified themselves as "individuals, assumed name entities, and corporations engaged in the tow service business." *TOWPROS*, Complaint ¶ 3. Although plaintiffs' descriptions are similar in *TOWPROS* and in this case, the Court cannot conclude that the plaintiffs in *TOWPROS* and the Plaintiffs in this case are the same parties or that the latter is in privity with the parties in the prior action. *See Niere v. St. Louis County, Missouri*, 305 F.3d 834, 837 (8th Cir. 2002) (res judicata bars "relitigation of the same cause of action by the same parties or privities in a case if the two actions have the following common identities: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the parties to the action; and (4) identity of the quality of the person for or against whom the claim is made."); *Canady v. Allstate Ins. Co.*, 282 F.3d 1005, 1016 (8th Cir. 2002) (collateral estoppel requires, *inter alia*, that "the party sought to be stopped was either a party or in

---

[4] Plaintiffs argue that their cause of action is not barred because *TOWPROS* did not result in a final adjudication on the issue of whether the anti-solicitation ordinance is genuinely related to safety, and because Plaintiffs have raised claims relating to the new AutoReturn contracting scheme, which could not have been brought in the 2000-2002 *TOWPROS* litigation. The Court declines to address these arguments because the Court concludes the action is not barred based on the issue of privity.

7

privity with a party to the prior action . . . ."). Plaintiffs are not barred by the doctrines of res judicata or collateral estoppel.

## 2. 49 U.S.C. § 14501(c)(1)

The City next argues that Plaintiffs cannot prevail on the merits because the "no stop or proceed" and anti-solicitation ordinances are not preempted because they fall within the safety exception. The Court agrees.

Title 49, United States Code Section 14501(c)(1) prohibits, except as provided in subpart (2) and (3):

> a State, political subdivision of a State, . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor vehicle carrier . . . with respect to the transportation of property.

The "safety exception" states that § 14501(c)(1) does "not restrict the safety regulatory authority of a State with respect to motor vehicles . . . ." 49 U.S.C. § 14501(c)(2)(A).

This district court in *TOWPROS* addressed the issue of whether the 2000 "no stop or proceed" ordinance, codified at § 76-287(2), fell within the safety exception. Order (Doc. # 14), p. 2, *TOWPROS*, No. 00-0467-CV-W-DW (W.D. Mo. Jan. 29, 2001). The district court found the tow ordinances were "undisputedly [] intended to eliminate the practice" of wreck-chasing and, therefore, fell within the safety exception. *Id.* at 4-5. The court made this conclusion after considering a similar anti-wreck chasing law considered by the Second Circuit. *Id.* at 4 (citing *Ace Auto Body & Towing Ltd. v. City of New York*, 171 F.3d 765, 771 (2d Cir. 1999)). In *Ace*, towing laws were enacted in New York "to eliminate the practice of 'chasing,' in which tow truck operators monitor police radio transmissions to learn of vehicular accidents and then race each other, often recklessly, to accident scenes to earn fees from the resultant towing and ancillary repair work." 171 F.3d at 769. The Second Circuit held that the towing provisions were "sufficiently safety-oriented to survive preemption." *Id.* However, *TOWPROS* is not dispositive. Although the Eight Circuit affirmed the judgment of the district court, the issue of whether the ordinance fell within the safety exception was not preserved for appeal. *TOWPROS*, 338 F.3d 873, 876 (8th Cir. 2003). But, this Court agrees with the

8

district court's finding that the current anti-solicitation and "no stop and proceed" ordinances fall within the safety exception because the purpose of the ordinances was to preserve the safety of the public.

Additionally, other non-Eighth Circuit cases have also upheld towing ordiances against preemption challenges, finding that the state's or municipality's requirements fell within the safety exception. *VRC LLC v. City of Dallas*, 460 F.3d 607 (5th Cir. 2006) (citing *Tillison v. City of San Diego*, 406 F.3d 1126, 1127 (9th Cir. 2005) (upholding requirements of written authorization from the real property owner or lessee and presence of that owner/lessee or a representative at the time of the tow); *Hott v. City of San Jose*, 92 F. Supp. 2d 996, 999-1000 (N.D. Cal. 2000) (upholding a requirement of liability insurance, a criminal background check, display of certain information, reporting, and record keeping); *Capitol City Towing & Recovery, Inc. v. Louisiana*, 873 So.2d 706, 711-13 (La. Ct. App. 2004) (upholding a solicitation ban, drivers' uniform requirement, storage facility requirements, and an oil-absorbent materials requirement)). The Court concludes that Sections 70-273 and Section 76-287(2) are sufficiently safety-oriented to avoid preemption.

Next, Plaintiffs argue that the registration requirement (Section 76-311) for accident towing is not safety-related and thus does not fall under the "safety exception." Plaintiffs make this argument without addressing whether the provision falls within the general rule enunciated in 49 U.S.C. § 14501(c)(1)—a State, political subdivision of a State, . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law *related to a price, route, or service* of any motor vehicle carrier . . . *with respect to the transportation of property.* The registration requirement does not relate to the price, rate, or service with respect to the transportation of property. The registration requirement establishes rules dictating who the City will call to perform towing services for the City. It is a rule imposed by the City in its role as a customer, dictating how the City/customer will decide who to hire. To accept Plaintiffs' argument would mean that any ordinance that has *any* effect on tow companies, regardless of how tangential, automatically regulates the price, rate or service of the company. If the argument were true, then no governmental entity could establish any guidelines regarding who they could hire. Further, "the . . . words 'with respect to the transportation of property' . . .

9

'massively limits the scope of preemption . . . ." *Dan's City Used Cars, Inc. v. Pelkey*, 133 S. Ct. 1769, 1778 (2013). "[I]t is not sufficient that a state law relates to the 'price, route, or service' of a motor carrier in any capacity; the law must also concern a motor carrier's 'transportation of property.'" *Id.* at 1778-79. The Court concludes that Section 76-311 is not the type of regulation that is preempted because it is not "related to" neither the "transportation of property" nor the "service" of a motor carrier. *See id.*

Finally, if Plaintiffs intend on enjoining Defendants from enforcing Section 76-289, the Court finds that the price schedule provision is not a price regulation—thus, not falling within the general rule in 49 U.S.C. § 14501(c)(1). Section 76-289 requires tow operators to prepare and file a schedule of prices to be charged for towing services, and makes it unlawful for tow operators to charge a price in excess of the amount authorized by the schedule. In no way does the provision relate to the actual price a towing company may charge for their towing services. Thus, section 76-289 is not a "law, regulation, or other provision having the force and effect of law related to a price . . . of any motor vehicle carrier." The Supreme Court has "cautioned that § 14501(c)(1) does not preempt state laws affecting carrier prices, routes, and services 'in only a tenuous, remote, or peripheral . . . manner.'" *Dan's City Used Cars, Inc.*, 133 S. Ct. at 1778 (quoting *Rowe v. New Hampshire Motor Transp. Assn.*, 552 U.S. 364, 370 (2008)). "[T]he breadth of the words 'related to' does not mean the sky is the limit." *Id.* The Court concludes that Plaintiff has failed to establish they are likely to succeed on the merits.

### C. Balance of Harms and Public Interest

The balance of harms and the public interest further tip the balance against granting Plaintiffs' motion. First, Defendant AutoReturn will be economically harmed and will suffer significant damage to its business should the preliminary injunction be granted because it will be unable to derive any revenue from its present contract with the City. Next, the City will be harmed because it has an interest in enforcing its ordinances and protecting the safety of its citizens. Finally, the effect on the public interest disfavors issuing the injunction. The general public has an interest in having clear and defined ordinances in place that relate to how tows are conducted following

an accident. The public would be harmed by being subjected to an often dangerous practice of wreck chasing in order to solicit business under the "go and tow" system. Further, without Section 76-289 in place, wreck chasers may be tempted to quote a price at the accident scene and then later charged a higher price at the destination. Section 76-289 protects the public by making it unlawful to charge a sum in excess of the price authorized by the price schedule, prevents such harm to the public. The Court finds that all of these factors favor denying Plaintiff's Motion.

### III. CONCLUSION

The Court concludes that a preliminary injunction is not warranted. Accordingly, Plaintiffs' Motion for Preliminary Injunction is denied.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: May 31, 2013
UNITED STATES DISTRICT COURT